IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN LEWIS, | ) | |
| | ) | No. 17 C 05272 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | Judge Manish S. Shah |
| TARRY WILLIAMS, NICHOLAS LAMB, | ) | |
| TRACY ENGELSON, LYDIA DETHROW, | ) | |
| IDOC Correctional Officer PICKENS, | ) | Magistrate Judge Daniel G. Martin |
| DR. MEYERS, DR. SHUBUGGER, and ANNA | ) | |
| MCBEE, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, BRIAN LEWIS, by and through his attorney, JAMES T. CROTTY,

and as and for his First Amended Complaint against Defendants, WEXFORD HEALTH

SOURCES INC., a corporation, TARRY WILLIAMS, an Individual, NICHOLAS LAMB, an

Individual, TRACY ENGELSON, an Individual, LYDIA DETHROW, an Individual, IDOC

Correctional Officer PICKENS, an Individual, DR. MEYERS, an Individual, DR.

SHUBUGGER, an Individual, and ANNA MCBEE, an Individual, states as follows:

## PREVIOUS LAWSUITS FILED BY PLAINTIFF BRIAN LEWIS

1. Case 15 C 03563, filed in the United States District Court for the Northern District of

Illinois, Eastern Division, entitled "Brian Lewis v. Sheriff of Cook County, et al.," assigned to

Judge Manish S. Shah. This case was settled and dismissed with settlement approved by the

Court.

## JURISDICTION AND VENUE

2.   Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343, because the matters in controversy arise under the Constitution of the United States, and laws of the United States.

3.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because all of the events that give rise to plaintiff's claim took place within the Northern District of Illinois, and at least one of the Defendants is a resident of the Northern District of Illinois.

## GENERAL ALLEGATIONS

### Plaintiff

4.   Plaintiff, Brian Lewis, ID R60592, was at the time of the actions complained of herein, between August 11, 2015 and March, 2016, an inmate at the Illinois Department of Corrections ("IDOC"), Stateville Correctional Center ("Stateville"), and the Northern Receiving Center ("the NRC"), which is part of Stateville, but who is now an inmate at Pinckneyville Correctional Center located in Pinckneyville, Illinois.

### Defendants

5.   Defendant Wexford Health Sources, Inc., is a private corporation organized under the laws of the State of Florida with its principal place of business located in Pittsburgh, Pennsylvania, that at all times noted herein had a contract with IDOC to provide medical care, including mental health care such as psychiatric and psychological care and treatment, to inmates at the various correctional facilities operated by IDOC, including both at Stateville and the NRC. Wexford is sued in both its official capacity and in its individual capacity.

6.   Defendant Tarry Williams was, at all times mentioned herein, the Warden of both Stateville and the NRC.  He is sued in his individual capacity.

2

7. Defendant Nicholas Lamb was, at all times mentioned herein, the Assistant Warden of the NRC. He is sued in his individual capacity.

8. Defendant Tracy Engelson was, at all times mentioned herein, the Superintendent of the NRC at Stateville. She is sued in her individual capacity.

9. Defendant Lydia Dethrow was, at all times mentioned herein, a correctional officer assigned to the NRC. She is sued in her individual capacity.

10. Defendant Pickens was, at all times mentioned herein, a correctional officer at Stateville and NRC. She is sued in her individual capacity.

11. Defendant Dr. Meyers was, on information and belief, at all times mentioned herein, the holder of a PhD in psychology and licensed to practice clinical psychology in the State of Illinois, and was employed by Wexford as a psychologist at the Wexford Health Clinic located at Stateville and the NRC facilities. She is sued in her individual capacity.

12. Defendant Dr. Shubugger was, on information and belief, at all times mentioned herein, the holder of a PhD in psychology, and licensed to practice clinical psychology in the State of Illinois and was employed by Wexford as a clinical psychologist and the head of the Mental Health Department at the Wexford Health Clinic located at Stateville and the NRC facilities. He is sued in his individual capacity.

13. Defendant Anna McBee was, at all times mentioned herein, an employee of IDOC employed as a correctional officer, and who, at other times, acted as a grievance officer at the NRC. She is sued in her individual capacity.

### Eighth Amendment Prohibits Cruel and Unusual Punishment of Inmates Under Color of State Law

14. The Eighth Amendment of the Constitution prohibits conditions of confinement of inmates that result in cruel and unusual punishment of inmates caused by the deliberate

3

indifference of individuals employed as employees or agents of the IDOC in violation of the Eighth Amendment to the Constitution all pursuant to 42 U.S.C. § 1983.

15. Among the conditions of confinement that can result in cruel and unusual punishment is a) the refusal or failure to provide inmates with cleaning supplies to clean their cells so as to allow an inmate to maintain the cell in a healthy, clean, safe and sanitary condition; b) the refusal or failure to provide an inmate with the minimal civilized measure of life's necessities including adequate shelter kept reasonably free from pest infestations, heat, clean clothing and towels, sanitation and hygiene items such as soap, bathroom tissue, toothbrush, toothpaste, deodorant and reasonably regular access to showers.

16. Under the Eighth Amendment to the Constitution, correctional officials, employees and healthcare employees, whether employed by the correctional facility or a private contractor such as Defendant Wexford, are also liable to an inmate if they are deliberately indifferent to an inmate's serious medical condition, including mental health and  mental and emotional needs and illnesses.

**Denial of Cleaning Supplies to Clean Plaintiff's Cells**

17. Plaintiff was constantly denied access to cleaning supplies to clean his cells from the time he first entered Stateville on August 11, 2015, until he was transferred from Stateville/NRC in March of 2016, even though his cells were covered with items such as lint, dust and dirt, there was urine on the floor, blood and spit on the sink and walls, there were buggers in and on the sides of the walls and the toilet was covered in feces and other bacteria from not being cleaned regularly. As a direct result of not being allowed to clean his cells, he was subjected to infestations of mice, roaches, ants, and spiders, and was afraid to go to sleep because he had been woken up on many occasions from a mouse running on his bed as he slept.

4

### Denial of Showers, Clean Clothing, and
### Lack of Items for Personal Hygiene

18. Plaintiff was also constantly denied access to regular showers, clean clothing, and other personal hygiene items, such as soap, toothpaste, toothbrush, and deodorant, to keep up his hygiene from the time he first entered Stateville on August 11, 2015, until he was transferred from Stateville/NRC in March of 2016. Plaintiff was also restricted from purchasing hygiene items from the commissary, which caused his skin to itch, his breath to smell and his gums to bleed. Plaintiff had to wash up in his cell every day and would occasionally get a shower once a week. As a direct result of the lack of showers, Plaintiff's skin became filmy because he was unable to adequately remove all of the soap from his body by washing in the sink in his cell.

19. As set forth below, Plaintiff repeatedly wrote to and spoke with Warden Williams, Assistant Warden Lamb, and Superintendent Engelson alerting them to these inhumane conditions of confinement that Plaintiff was being subjected to, causing him to suffer unnecessary cruel and unusual punishment, but Defendants Williams, Lamb, and Engelson never took the steps to correct or rectify the causes of these inhumane conditions of confinement, nor did they reprimand or discipline the correctional officers for failing or refusing to supply these items to Plaintiff or to correct the pest infestations.

20. All of these actions established an unwritten custom or policy encouraging the continued wrongful conduct of the correctional officers in failing to provide the above noted cleaning supplies, personal hygiene items, showers and the failure to correct the pest infestations.

### Cell 301, K-Wing

21. On or about September 2, 2015, Plaintiff sent an emergency grievance to Defendant Williams concerning the filthy condition of his cell and how he was being deliberately ignored by staff when he asked for laundry service and cleaning supplies, when he reported the filthy

5

condition of his cell, including that he had human feces built up in the toilet, and that the cell smelled of urine. He also reported that he had been wearing the same jumpsuit since he had been assigned to the cell on August 11, 2015, and further that he had reported this to many correctional officers and they did nothing to address these conditions. Defendant Williams did not respond to Plaintiff's emergency grievance. A true and correct copy of Plaintiff's emergency grievance is attached hereto and made a part hereof as Exhibit A.

22. Plaintiff also sent follow up letters to Defendant Williams, on September 14, 2015 and September 21, 2015, in order to exhaust all of his available remedies, however, Defendant Williams did not respond to either of Plaintiff's letters. The Plaintiff's follow up letters of September 14, 2015 and September 21, 2015 are attached hereto and made a part hereof as Exhibits B and C respectively.

23. On September 23, 2015, Plaintiff sent a letter to Defendant grievance officer Anna McBee asking her if she would respond to his grievance or have Defendant Williams respond to the grievance so that he could exhaust his available remedies, but neither Defendant Williams nor Defendant McBee responded to Plaintiff's letter. A true and correct copy of Plaintiff's September 23, 2015 letter to Defendant McBee is attached hereto and made a part hereof as Exhibit D.

24. On September 30, 2015, Defendant correctional officer Dethrow delivered a lunch tray to Plaintiff's cell that had chili on it and handed it to Plaintiff who then ate a spoon full of chili, at which time he discovered a dead mouse in the chili that he had just bitten into. When Plaintiff showed the dead mouse to Defendant Dethrow, she claimed that she was not going to report it because supposedly inmates were saving dead mice to put in their food although Plaintiff denied putting the mouse in the chili. Defendant Dethrow refused Plaintiff's request that he be checked

6

out by the Wexford Health Clinic to see if he had eaten something that could give him a disease that could get him sick or, worse, kill him.

25. On September 30, 2015 and October 6, 2015, Plaintiff sent letters to the Medical Director at Wexford Medical Health Clinic at Stateville/NRC, requesting that he be checked out because he found a dead mouse in food that he ate and he wasn't feeling well, but no one from Wexford ever examined or testing him for any potential diseases. True and correct copies of Plaintiff's September 30 and October 6, 2015 letters to the Medical Director are attached hereto and made a part hereof as Exhibit E and Exhibit F respectively.

26. When Plaintiff had bitten into the dead mouse in the chili, he had been put at risk of contracting a disease known as Hanthavirus Pulmonary Syndrome (HPS), which is primarily spread through airborne transmission of tiny droplets of rodent urine, droppings and saliva, and that can be contracted if a person touches something that has been contaminated with rodent urine, droppings, or saliva and touches their nose or mouth, or by eating food contaminated by urine, droppings, or saliva from an infected rodent. Further, there is a significant mortality rate for persons infected by the Hanthavirus with 36% of all reported cases of HPS resulting in death.

27. Further, on October 2, 2015 at approximately 3:00 a.m., Plaintiff's cellmate vomited six times, including twice with blood in his vomit. Later, a sergeant who saw the blood himself threw up in Plaintiff's cell. Plaintiff was again refused cleaning supplies for his cell, but was given gloves and a mop to clean up the vomit and blood from the cell, but not provided with proper training and hazmat equipment to protect against the infection of pathogens from his cellmate's blood, nor was he given a medical examination or test to insure that Plaintiff had not been infected with blood-borne pathogens from contact with his cellmate's blood.

28. Defendant Wexford and Defendants Williams, Lamb, and Engelson, the senior officials at NRC, all failed to establish, implement, or enforce the necessary policies, practices and procedures for dealing with infectious or communicable diseases, including failing to provide Plaintiff with medical attention, pursuant to standardized protocols required to protect Plaintiff against hazardous materials during his contact with the blood in his cell, or to examinations or testing  whether Plaintiff had been infected who came into contact with the blood before and during the cleanup.

29.  Plaintiff's grievance dated September 30, 2015 and filed on or about October 7 or October 8, 2015, regarding the mouse that he bit into in the chili on September 30, 2015 and the October 1, 2015 incident where he had to clean up his cellmate's vomit and blood and the correctional officer's vomit was denied. A true and correct copy of Plaintiff's grievance dated September 30, 2015 is attached hereto and made a part hereof as Exhibit G. A true and correct copy of the Grievance Officer's Report denying Plaintiff's grievance is attached hereto and made a part hereof as Exhibit H.

30. On November 22, 2015, Plaintiff was outside in the yard when his stomach started to bother him and he had to use the bathroom.  There is no restroom or porta pottie out in the yard, so Plaintiff banged on the door so that c/o Pickens would let him back inside to use the bathroom, but c/o Pickens refused to let Plaintiff back inside.  As a result, Plaintiff was forced to defecate in the corner outside in the yard.

31. On November 22, 2015, Plaintiff filed a grievance regarding the above, a true and correct copy of which is attached hereto as Exhibit I.  On November 28, 2015, Plaintiff sent a follow up letter to Defendant Williams regarding this matter, a true and correct copy of which is attached hereto as Exhibit J. Plaintiff did not receive any answer to his grievance or to his letter.

### December 2, 2015 through January 2, 2016
### Placed in 301 C-Wing, Segregation Cell

32. On or about December 2, 2015, Plaintiff was placed in a segregation cell that had feces and blood covering the walls, a mattress that was torn open and smelled of urine, and there were no sheets for the mattress. Plaintiff was denied a replacement mattresss and any cleaning supplies, along with the denial of access to sick call and medical care by the corrections officers.

33. On December 10, 2015, Plaintiff wrote Defendant Engelson a letter notifying her that he was being treated like an animal and that his cell smelled like urine and had human feces smeared on the walls. He also told her that he had been denied cleaning supplies to clean up his cell by the corrections officer who told him that he could not get cleaning supplies and that he should "write a grievance like you always do, that's what you get for being a troublemaker." Defendant Engelson never responded to this letter. A true and correct copy of this letter is attached hereto and made a part hereof as Exhibit K.

34. On February 3, 2016, Plaintiff wrote a grievance regarding the conditions of his cell. A true and correct copy of this grievance is attached hereto and made a part hereof as Exhibit L. The corrections officers would not allow Plaintiff to clean his cell or switch mattresses or get medical care, and labeled Plaintiff a troublemaker and "snitch" because of the grievances, letters and complaints he was writing regarding the inhumane conditions he was being subjected to.

### Suicide Watch, Cell B-108 from
### January 7, 2016 through February 2, 2016

35. On January 7, 2016, Plaintiff was placed on a suicide watch in a strip cell, B-108, where he was naked, having no clothes, no sheets, no mattress, and where Plaintiff was forced to sleep on the filthy floor. Feces and blood were smeared on the cell walls and door, the toilet didn't flush, the water was not turned on, so Plaintiff was unable to get a drink of water. Plaintiff

wasn't given soap, toothpaste, toothbrush, or a towel so that he could bathe and take care of his daily hygiene responsibilities and was refused the right to take a shower. Plaintiff was not given cleaning supplies to clean his cell, nor were any of the IDOC employees allowed to clean his cell.

36. Plaintiff informed Defendants Meyers and Shubugger that he was depressed and suicidal as a result of feeling overwhelmed, hopeless, and helpless because nothing was being done to stop him from being subjected to these inhumane living conditions. Defendants Meyers and Shubugger told Plaintiff that if he stopped misbehaving he would get his clothes back and get cleaning supplies to clean his cell. Plaintiff was also told that his mental health issues/illness was just his misbehaving. Defendants Meyers and Shubugger also failed to report the unclean, unhealthy, and unsanitary condition of the Plaintiff's cell to the proper authorities as required by Wexford's rule that medical and mental health staff were to report such conditions to the proper authorities.

37. As a result of the fear that he may be transferred against his will to Menard Correctional Center where he feared for his safety and well-being because of the enemies he had at Menard, he had an anxiety attack and attempted suicide. Plaintiff again tried to commit suicide on January 25, 2016 and on January 28, 2016 because correctional officials, Defendant Lamb, and Defendant Shubugger were ignoring his complaints about the inhumane conditions he was being subjected to and did nothing to address or correct the inhumane conditions Plaintiff was being subjected to.

38. On February 19, 2016 Plaintiff sent a grievance regarding the above issues, but the grievance was never responded to. A true and correct copy of this grievance is attached hereto and made a part hereof as Exhibit N.

10

39. On February 16, 2016, Plaintiff wrote a letter to Defendant Lamb asking him to look into his enemies' list at Menard, notifying him of the inhumane living conditions, lack of cleaning supplies, and asking why he was being treated like a nuisance.  Further, Plaintiff stated that he had back problems, athlete's feet and rashes, which came from Stateville, and, although he had put many medical slips into Health Care, he had still not received medical care for those ailments.  Defendant Lamb did not respond to this letter.  A true and correct copy of the February 16, 2016 letter from Plaintiff to Defendant Lamb is attached hereto and made a part hereof as Exhibit M.

40. On March 3, 2016 Plaintiff again attempted suicide by trying to hang himself, and he was placed on administrative psych-strip cell detention (10 minute watch). Plaintiff felt depressed and suicidal because his requests relating to the inhumane conditions, lack of cleaning supplies, the fear of being transferred to Menard were all being ignored. Defendants Meyers and Shubugger told Plaintiff that he was faking and that nothing was wrong with him. Defendants Meyers and Shubugger again failed to report the unclean, unhealthy, and unsanitary condition of the Plaintiff's cell to the proper authorities as required by Wexford's rule that medical and mental health staff were to report such conditions to the proper authorities.

41. Defendant Lamb came to Plaintiff's strip cell and told Plaintiff that he was tired of his bullshit and that his stay at Stateville was about over and that he would soon be Menard's problem, so he could stop sending him or any other warden any more letters or grievances because it's not like he's getting a response back to them. Soon thereafter, Plaintiff was transferred to Menard Correctional Center.

42. On March 29, 2016, Plaintiff sent a grievance relating to the conditions he was subjected to on March 3, 2016 when he attempted suicide, but the grievance was never responded to. A true and correct copy of the grievance is attached hereto and made a part hereof as Exhibit O.

**Defendants Williams, Lamb and Engelson**

43. As set forth above, Defendants Williams, Lamb and Engelson all had personal knowledge of the inhumane conditions of confinement that Plaintiff was being subjected to, and specifically knew of the following:

a. that the correctional officers were failing to supply Plaintiff with the cleaning supplies he needed to keep his cell in a clean, healthful, safe, and sanitary condition;

b. that the correctional officers were failing to provide Plaintiff with regular showers, clean clothing, and the items necessary to maintain Plaintiff's personal hygiene;

c. that the correctional officers failed to take the steps necessary to eliminate the pest infestations in Plaintiff's cell;

d. that the correctional officers were refusing and denying Plaintiff his right to file medical slips with the Wexford Clinic or otherwise obtain both mental and medical health care from the Wexford Clinic.

44. Defendants Williams, Lamb and Engelson, in spite of their knowledge of the wrongful conduct of the correctional officers as set forth above, failed to take the necessary steps to correct and eliminate the conditions of confinement that were being caused by the correctional officers' unlawful conduct.

12

45. Defendants Williams, Lamb and Engelson also, by their failure to reprimand or discipline any of the correctional officers involved in the misconduct, implicitly condoned, accepted, and endorsed the continued wrongful conduct of the correctional officers, all of which extended and continued, and increased the intensity of the inhumane conditions of confinement that ultimately caused not only the physical, mental and emotional illness that Plaintiff suffered, but intensified and extended the duration of the inhumane conditions of confinement that drove Plaintiff to attempt to commit suicide on four occasions.

## COUNT I

### Defendant Tarry Williams

**Conditions of Confinement that Resulted in Cruel and
Unusual Punishment in Violation of the Eighth
Amendment Pursuant to 42 U.S.C. § 1983**

46. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

47. As a direct and proximate result of Defendant Williams' wrongful conduct as set forth above, Defendant Williams is liable for the actual, consequential, compensatory and punative damages arising from his violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment of Plaintiff in violation of the Eighth Amendment.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant Williams:

      a.  for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Williams' personal wrongful conduct;

b.   and award Plaintiff his costs and reasonable attorneys fees accrued by

Plaintiff in accordance with 42 U.S.C. § 1988.

### COUNT II

### Defendant Tarry Williams

### Deliberate Indifference to Plaintiff's
### Serious Medical Health Needs

48. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint

as though fully set forth herein.

49. As a direct and proximate result of Defendant Williams' wrongful conduct as set forth

above, Defendant Williams is liable for the actual, consequential, compensatory and punative

damages for his failure to reprimand, correct, or discipline the correctional officers for their

conduct in failing and refusing to allow Plaintiff to put in medical slips or have access to medical

care and attention from the Wexford Clinic for his physical injuries, ailments, illnesses, and risks

as set forth above.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against

Defendant Williams:

a.   for the actual, consequential, compensatory and punitive damages suffered

by Plaintiff as a result of Defendant Williams' personal wrongful conduct;

b.   and award Plaintiff his costs and reasonable attorneys fees accrued by

Plaintiff in accordance with 42 U.S.C. § 1988.

14

**COUNT III**

**Defendant Nicholas Lamb**

**Conditions of Confinement that Resulted in Cruel and
Unusual Punishment in Violation of the Eighth
Amendment Pursuant to 42 U.S.C. § 1983**

50. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

51. As a direct and proximate result of Defendant Lamb's wrongful conduct as set forth above, Defendant Lamb is liable for the actual, consequential, compensatory and punative damages arising from his violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant Lamb:

      a.   for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Lamb's personal wrongful conduct;

      b.   and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

**COUNT IV**

**Defendant Nicholas Lamb**

**Deliberate Indifference to Plaintiff's
Serious Medical Needs**

52. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

15

53. As a direct and proximate result of Defendant Lamb's wrongful conduct as set forth above, Defendant Lamb is liable for the actual, consequential, compensatory and punative damages for his failure to reprimand, correct, or discipline the correctional officers for their conduct in failing and refusing to allow Plaintiff to put in medical slips or have access to medical care and attention from the Wexford Clinic for his physical injuries, ailments, illnesses, and risks as set forth above.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant Lamb:

      a. for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Lamb's personal wrongful conduct;

      b. and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

## **COUNT V**

### **Defendant Engelson**

**Conditions of Confinement that Resulted in Cruel and Unusual Punishment in Violation of the Eighth Amendment Pursuant to 42 U.S.C. § 1983**

54. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

55. As a direct and proximate result of Defendant Engelson's wrongful conduct as set forth above, Defendant Engelson is liable for the actual, consequential, compensatory and punative damages arising from her violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment.

16

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant Engelson:

    a.   for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Lamb's personal wrongful conduct;

    b.   and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT VI

### Defendant Engelson

### Deliberate Indifference to Plaintiff's
### Serious Medical Needs

56. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

57. As a direct and proximate result of Defendant Engelson's wrongful conduct as set forth above, Defendant Engelson is liable for the actual, consequential, compensatory and punative damages for her failure to reprimand, correct, or discipline the correctional officers for their conduct in failing and refusing to allow Plaintiff to put in medical slips or have access to medical care and attention from the Wexford Clinic for his physical injuries, ailments, illnesses, and risks as set forth above.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant Engelson:

    a.   for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Engelson's personal wrongful conduct;

b.   and award Plaintiff his costs and reasonable attorneys fees accrued by

Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT VII

### Defendant Lydia Dethrow

**Conditions of Confinement that Resulted in Cruel and
Unusual Punishment in Violation of the Eighth
Amendment Pursuant to 42 U.S.C. § 1983**

58. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint

as though fully set forth herein.

59. As a direct and proximate result of Defendant Dethrow's wrongful conduct as set forth

above, Defendant Dethrow is liable for the actual, consequential, compensatory and punative

damages arising from her violation of the Eighth Amendment to the Constitution prohibiting,

under color of State law, by the imposition of inhumane conditions of confinement that resulted

in cruel and unusual punishment in violation of the Eighth Amendment.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against

Defendant Dethrow:

a.   for the actual, consequential, compensatory and punitive damages suffered

by Plaintiff as a result of Defendant Dethrow's personal wrongful conduct;

b.   and award Plaintiff his costs and reasonable attorneys fees accrued by

Plaintiff in accordance with 42 U.S.C. § 1988.

18

## COUNT VIII

### Defendant Lydia Dethrow

### Deliberate Indifference to Plaintiff's
### Serious Medical Needs

60. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

61. As a direct and proximate result of Defendant Defendant Dethrow's wrongful conduct as set forth above, Defendant Dethrow is liable for the actual, consequential, compensatory and punative damages for her failure to reprimand, correct, or discipline the correctional officers for their conduct in failing and refusing to allow Plaintiff to put in medical slips or have access to medical care and attention from the Wexford Clinic for his physical injuries, ailments, illnesses, and risks as set forth above.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant Dethrow:

    a.   for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Dethrow's personal wrongful conduct;

    b.   and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT IX

### Defendant Pickens

### Conditions of Confinement that Resulted in Cruel and
### Unusual Punishment in Violation of the Eighth
### Amendment Pursuant to 42 U.S.C. § 1983

62. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

19

63. As a direct and proximate result of Defendant Pickens' wrongful conduct as set forth above, Defendant Pickens is liable for the actual, consequential, compensatory and punative damages arising from her violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant Pickens:

    a.   for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Pickens' personal wrongful conduct;

    b.   and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT X

### Defendant Pickens

### Deliberate Indifference to Plaintiff's
### Serious Medical Needs

64. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

65. As a direct and proximate result of Defendant Pickens' wrongful conduct as set forth above, Defendant Pickens is liable for the actual, consequential, compensatory and punative damages for her failure to reprimand, correct, or discipline the correctional officers for their conduct in failing and refusing to allow Plaintiff to put in medical slips or have access to medical care and attention from the Wexford Clinic for his physical injuries, ailments, illnesses, and risks as set forth above.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendants Dethrow and Pickens:

  a.  for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Pickens' personal wrongful conduct;

  b.  and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

### COUNT XI

### Defendant Anna McBee

**Conditions of Confinement that Resulted in Cruel and
Unusual Punishment in Violation of the Eighth
Amendment Pursuant to 42 U.S.C. § 1983**

66. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

67. As a direct and proximate result of Defendant McBee's wrongful conduct as set forth above in paragraphs 23 through 29, Defendant McBee is liable for the actual, consequential, compensatory and punative damages arising from their violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment by failing to report to the proper authorities that Plaintiff was not being supplied with cleaning supplies and personal hygiene items, and for her failure to report to the proper authorities that the correctional officers denied Plaintiff access to medical attention.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendant McBee:

21

a. for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant McBee's personal wrongful conduct;

b. and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT XII

### Defendant Anna McBee

### Deliberate Indifference to Plaintiff's Serious Medical Needs

68. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

69. As a direct and proximate result of Defendant McBee's wrongful conduct as set forth above in paragraphs 23 through 29, Defendant McBee is liable for the actual, consequential, compensatory and punative damages arising from their violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment by failing to report to the proper authorities that Plaintiff was not being supplied with cleaning supplies and personal hygiene items, and for her failure to report to the proper authorities that the correctional officers denied Plaintiff access to medical attention.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendant McBee:

a. for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant McBee's personal wrongful conduct;

b. and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT XIII

### Defendant Meyers

**Deliberate Indifference to Plaintiff's Serious
Mental Health Illnesses and Disease**

70. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

71. As a direct and proximate result of Defendant Meyers' wrongful conduct as set forth above, Defendants Meyers is liable for the actual, consequential, compensatory and punative damages arising from their violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment by denying Plaintiff proper mental health care and treatment for his feelings of depression, hopelessness and helplessness arising from the inhumane living conditions he was being subjected to, and instead demanding that Plaintiff comply with correctional authorities' demands that he stop filing grievance letters and complaints about the inhumane living conditions, and that if he stopped trying to commit suicide and stopped "misbehaving," he would get his clothes back and cleaning supplies to clean his cell. Defendant Meyers failed to report the unclean, unhealthy, and unsanitary condition of the Plaintiff's cell to the proper authorities as required by Wexford's rule that medical and mental health staff were to report such conditions to the proper authorities.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendant Meyers:

     a. for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Meyers' personal wrongful conduct;

23

b. and award Plaintiff his costs and reasonable attorneys fees accrued by

Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT XIII

### Defendant Shubugger

**Deliberate Indifference to Plaintiff's Serious
Mental Health Illnesses and Disease**

72. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

73. As a direct and proximate result of Defendant Shubuggers' wrongful conduct as set forth above, Defendant Shubugger is liable for the actual, consequential, compensatory and punative damages arising from his violation of the Eighth Amendment to the Constitution prohibiting, under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment by denying Plaintiff proper mental health care and treatment for his feelings of depression, hopelessness and helplessness arising from the inhumane living conditions he was being subjected to, and instead demanding that Plaintiff comply with correctional authorities' demands that he stop filing grievance letters and complaints about the inhumane living conditions, and that if he stopped trying to commit suicide and stopped "misbehaving," he would get his clothes back and cleaning supplies to clean his cell. Defendant Shubugger failed to report the unclean, unhealthy, and unsanitary condition of the Plaintiff's cell to the proper authorities as required by Wexford's rule that medical and mental health staff were to report such conditions to the proper authorities

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendant Shubugger:

a.  for the actual, consequential, compensatory and punitive damages suffered by Plaintiff as a result of Defendant Shubugger's personal wrongful conduct;

b.  and award Plaintiff his costs and reasonable attorneys fees accrued by Plaintiff in accordance with 42 U.S.C. § 1988.

## COUNT XIV

### Defendant Wexford

### Deliberate Indifference to Plaintiff's Serious Medical and Mental Health Needs

74. Plaintiff reasserts and realleges paragraphs 1 through 45 of this First Amended Complaint as though fully set forth herein.

75. Defendant Wexford failed to establish and implement a proper procedure that would allow the inmate to place a medical request slip directly into a lockbox, or to hand a medical slip directly to a medical staff member, instead of handing the medical slip to a correctional officer and relying on the correctional officer to get the medical slip into a lockbox or directly to the proper medical staff member.

76. Defendant Wexford failed to enforce a policy requiring medical and mental heatlth staff, such as Defendants Meyers and Shubugger, to inspect inmates' cells when visiting with the inmate in his cell to determine if they are habitable and clean, and to report to the proper authorities when they find that an inmates' cell is in an unclean, unhealthy, and unsanitary condition.

77. Defendant Wexford is liable for the actual, consequential, compensatory and punative damages arising from his violation of the Eighth Amendment to the Constitution prohibiting,

under color of State law, by the imposition of inhumane conditions of confinement that resulted in cruel and unusual punishment in violation of the Eighth Amendment as described above.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendant Wexford:

a.  for the actual, consequential, compensatory and punitive damages suffered by Plaintiff;

b.  and award Plaintiff his costs and reasonable attorneys fees accrued in accordance with 42 U.S.C. § 1988.

**Plaintiff demands trial by jury.**

Respectfully submitted,

BRIAN LEWIS, Plaintiff

By: */s/ James T. Crotty*
       Attorney for Brian Lewis

James T. Crotty (0549029)
90 Old Post Rd.
Oswego, IL  60543
312-623-1599
jamestcrotty@aol.com
*Attorney for Plaintiff*